FILED

2010 Feb-19  PM 04:00
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

| | | |
|---|---|---|
| **SONJA D. KING,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Civil Action No. CV-08-S-0856-NE** |
| | ) | |
| **VOLUNTEERS OF AMERICA,** | ) | |
| **NORTH ALABAMA, INC.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM OPINION

Plaintiff, Sonja D. King, commenced this action against her former employer, Volunteers of America, North Alabama, Inc., asserting six claims: *i.e.*, three federal claims for alleged racial harassment, race discrimination, and retaliation, as well as three state law claims for slander, invasion of privacy, and negligent and/or wanton hiring, training, supervision and/or retention.[1]

The case presently is before the court on defendant's motion for summary judgment on five of those six claims.[2] Defendant argues that it is entitled to summary judgment on all claims *except* plaintiff's racial harassment claim, for which defendant believes genuine issues of material fact preclude summary judgment.

Also pending before the court is a motion by defendant to strike numerous

---

[1] *See* doc. no. 1.

[2] *See* doc. no. 40.

statements that are included in plaintiff's response to defendant's motion for summary judgment and the accompanying evidentiary submissions — statements that defendant contends are inadmissible under the Federal Rules of Evidence.[3]  Although the court finds that plaintiff's submissions are replete with speculative and conclusory testimony, as well as inadmissible hearsay, the court, nevertheless, has not considered that evidence to evaluate the claims on summary judgment.  Accordingly, the court will deny defendant's motion to strike as moot.

Upon consideration, and for the following reasons, defendant's motion for summary judgment will be granted on the five  claims to which it is directed.

## I. LEGAL STANDARD

Federal Rule of Civil Procedure 56 provides that summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).[4]  In other words, summary judgment is proper "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the

---

[3] *See* doc. no. 23.

[4] Rule 56 was recently amended in conjunction with a general overhaul of the Federal Rules of Civil Procedure.  The Advisory Committee was careful to note, however, that the changes "are intended to be *stylistic only*."  Adv. Comm. Notes to Fed. R. Civ. P. 56 (2007 Amends.) (emphasis supplied).  Consequently, cases interpreting the previous version of Rule 56 are equally applicable to the revised version.

existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

"In making this determination, the court must review all evidence and make all reasonable inferences in favor of the party opposing summary judgment." *Chapman v. AI Transport*, 229 F.3d 1012, 1023 (11th Cir. 2000) (*en banc*) (quoting *Haves v. City of Miami*, 52 F.3d 918, 921 (11th Cir. 1995)).   Inferences in favor of the non-moving party are not unqualified, however.   "[A]n inference is not reasonable if it is only a guess or a possibility, for such an inference is not based on the evidence, but is pure conjecture and speculation." *Daniels v. Twin Oaks Nursing Home*, 692 F.2d 1321, 1324 (11th Cir. 1983).   Moreover,

> [t]he mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case.  The relevant rules of substantive law dictate the materiality of a disputed fact.  A genuine issue of material fact does not exist unless there is sufficient evidence favoring the nonmoving party for a reasonable jury to return a verdict in its favor.

*Chapman*, 229 F.3d at 1023 (quoting *Haves*, 52 F.3d at 921).  *See also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986) (asking "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law").

## II.  FACTS

3

Plaintiff, Sonja D. King, is an African-American female who began working for Volunteers of America, North Alabama, Inc. ("VOANA") in 2002 as a "direct care aide" in the Florence, Alabama office.[5]   VOANA is a Christian human services organization that provides material and spiritual assistance to persons in need of sustenance and guidance.[6]   VOANA operates group homes in Florence, Alabama, serving the needs of developmentally-challenged adults and adolescents.[7] During the time that plaintiff worked as a direct care aide, Debra Williamson was her immediate supervisor.  Teresa Stephenson, the Program Director in the Florence, Alabama office, supervised Debra Williamson.[8] Ms. Stephenson reported to VOANA's Chief Executive Officer, Victor Tucker.[9] Ms. Williamson, Ms. Stephenson, and Mr. Tucker are Caucasian.

Plaintiff was forced to take a leave of absence from her employment with VOANA in December 2003, as a result of her deployment to Iraq, to fulfill her duties as a member of the Alabama National Guard.[10]  Upon her return from active duty, she

---

[5] *See* doc. no. 42 (Evidentiary Materials in Support of Defendant's Motion for Summary Judgment), Ex. A (Deposition of Sonja D. King), at 34-35.

[6] *See id.,* Ex. A(15) (Volunteers of America, North Alabama Personal Policies, Updated March 2006), at 5.

[7] *See id.*

[8] *See* Deposition of Sonja D. King, at 34-36.

[9] *See id.* at 100-01.

[10] *See id.* at 36-37.

4

interviewed with Mr. Tucker for a "service coordinator" position.[11]  The position was a promotion over the direct care aide position formerly held by plaintiff.[12]  Mr. Tucker hired plaintiff to work in the coordinator position during April of 2005, and Teresa Stephenson then became plaintiff's direct supervisor.[13]

## A.   Plaintiff's Allegations of Racist Remarks

Plaintiff claims that, during the time that she worked as a service coordinator, she frequently heard Teresa Stephenson make derogatory remarks regarding plaintiff's race.[14]  During her deposition, plaintiff testified:  "Teresa Stephenson, she didn't want to train me because I was a black individual, smart, educated, and she had told me in my face.  And she was intimidated by me."[15]  Plaintiff claims that Stephenson told her that "VOANA had to hire blacks but she was going to get rid of them as soon as she could."[16]  Plaintiff also alleges that "Teresa Stephenson told [her] that she wanted only whites in power and in higher positions at VOANA's offices in Florence, Lauderdale County, Alabama."[17]

Similarly, plaintiff claims that Debra Williamson, who also held a service

---

[11] *See id.* at 38.

[12] *See id.* at 40.

[13] *See id.* at 39.

[14] *See* Declaration of Sonja D. King, at 10-16.

[15] Deposition of Sonja D. King, at 135.

[16] Declaration of Sonja D. King, at 15.

[17] *Id.* at 16.

coordinator position, frequently expressed her desire to have an all white staff.[18] According to plaintiff, Ms. Williamson said she was "tired of her black staff," and wanted plaintiff to supervise all of the black employees so that she could supervise the white employees.[19]

Plaintiff alleges that, on several occasions throughout her employment with VOANA, she spoke with Cordia Bolden, an African-American female employed in the Human Resources Department, and Robin Bucklin (a female recruiter of unknown racial heritage or color in the same department), both on the telephone and in person, to report what she perceived to be racially discriminatory and harassing behavior.[20] Plaintiff claims that, in late September of 2006, when Cordia Bolden came to Florence, Alabama to conduct a training session, she (plaintiff) and another African-American VOANA employee, Cassandra Nichols, met with Ms. Bolden and lodged complaints of perceived race discrimination.[21]  In an affidavit submitted by defendant in support of summary judgment, however, Cordia Bolden denies having received any such complaints.  Ms. Bolden's denial is unequivocal:  "Ms. King never complained to me about any type of discrimination or harassment during her employment."[22]

---

[18] *See id.* at 12.

[19] *Id.* at 12.

[20] *See* Deposition of Sonja D. King, at 309, 340-41.

[21] *See* Declaration of Sonja D. King. at 35;  Deposition of Sonja D. King, at 309.

[22] *See* doc. no. 42, Ex. C (Affidavit of Cordia Bolden), ¶ 13.

Similarly, Robin Bucklin denies having received such complaints from plaintiff or anyone else at VOANA.[23]

Plaintiff also alleges in her statement of facts that she "complained to [VOANA's Chief Executive Officer Victor] Tucker," but provides no details about either the substance or circumstances of the complaint.[24]  In her declaration, plaintiff explains that she attempted to speak with Mr. Tucker on at least one occasion.[25] According to plaintiff,

> Victor Tucker told me he was in a hurry and would talk to me later. Victor Tucker told me he could not come to Florence, Alabama and wanted to know if I would meet him at Applebee's in Athens, Alabama. I did not want to meet Victor Tucker at Applebee's in Athens, Alabama. I thought that would be inappropriate . . . Victor Tucker never met with me again and did not take effective action to stop the racial discrimination and harassment at VOANA.[26]

Like Cordia Bolden and Robin Bucklin, however, Victor Tucker denies having heard any complaints of discrimination.[27]  His affidavit states: "Ms. King never complained to me, or left me any messages, about unlawful discrimination or harassment by Terersa Stephenson, Sarah Rickard, Amy Johnson, Carrie Rickard, Melissa Castle or

---

[23] *See* doc. no. 42, Ex. D (Affidavit of Robin Bucklin), ¶ 6.

[24] *See* doc. no. 43, at 20.

[25] *See* Declaration of Sonja D. King, at 25-26.

[26] *Id.*

[27] *See* Affidavit of Victor Tucker, ¶ 21.

Debra Williamson, or anyone else."[28]

## B.    Adverse Employment Actions

Victor Tucker directed a letter to plaintiff on November 13, 2006, informing her that she was being placed on administrative leave pending an investigation of whether she  was following VOANA's policies and procedures.[29]   The letter referenced numerous written reprimands that plaintiff had accumulated in 2006 and enclosed copies of each for her review.[30]   The letter asked plaintiff to provide a response to each reprimand.[31]

Plaintiff had received one of those written reprimands in March of 2006, allegedly for allowing other employees to listen while she disciplined staff members, and for disclosing confidential information about co-workers to other staff members.[32] Plaintiff denies that she disciplined one employee in front of another, or that she disclosed personal and confidential information about staff members.[33]

Plaintiff received another written reprimand on or about July 24, 2006, for

---

[28] *Id.*

[29] *See* doc. no. 42, Ex. A(6) (Letter to Sonja King dated Nov. 13, 2006).

[30] *See id.*

[31] *See id.*

[32] *See* Deposition of Sonja D. King, at 48-54; doc. no. 42, Ex. A(7) (Written Reprimand dated March 29, 2006).

[33] *See* doc. no. 43 (Evidentiary Materials in Opposition to Motion for Summary Judgment); Ex. A (Declaration of Sonja D. King), at 26-27.

making negative comments and releasing information about a former employee in response to an inquiry from a prospective employer of the former employee.[34] VOANA's personnel policy, which plaintiff acknowledged that she received and understood, provided in pertinent part that "[r]eference letters furnished to prospective employers of present or former employees will be based on factual material contained in the staff member's personnel file."[35] VOANA prohibits its employees from making derogatory remarks about other employees to persons who are not employed by VOANA.[36] Plaintiff does not dispute that she released the information, but "emphatically denies that she told the inquiring party anything other than exactly what [Teresa] Stephenson told her to tell the inquiring party."[37]

Another reprimand referenced in the November 13, 2006 letter from Victor Tucker concerned complaints by VOANA staff that the heating unit in Group Home No. 26 — a home under plaintiff's supervision — was not working, and that plaintiff had not addressed the problem.[38] Plaintiff admits that the heating unit did not work,

---

[34] *See* Deposition of Sonja D. King, at 84-100; doc. no. 42, Ex. A(10) (Written Reprimand dated July 24, 2006).

[35] Doc. no. 42, Ex. A(15) (Volunteers of America, North Alabama Personnel Policies dated March 2006), at 13; see doc. no. 42, Ex. A(16) (Acknowledgment Form Signed by Sonja D. King on July 31, 2002).

[36] *See* doc. no. 42, Ex. B (Affidavit of Victor Tucker), ¶ 23.

[37] Doc. no. 43, at 7.

[38] *See* doc. no. 42, Ex. B(2a) (Written Reprimand of Sonja King dated Nov. 13, 2006 Regarding the Heating System).

and that she was aware of its condition.[39]   Nevertheless, she attempted to explain that she addressed the complaints about the heating system by reporting the issue to both Teresa Stephenson and Langdon Conaway, the employee in VOANA's corporate office who was responsible for identifying problems with VOANA's homes. According to plaintiff, both Stephenson and Conaway repeatedly told her not to worry about the heating system in Unit No. 26, because VOANA planned to move out of that unit soon.[40]   Ms. Stephenson denied that assertion, however, saying that she "never told Ms. King not to worry about the heating unit or not to spend money on the heating unit."[41]

Plaintiff received another reprimand for allowing Cassandra Nichols, who worked under plaintiff's supervision, to correct her own time sheet.[42]   As a service coordinator, plaintiff was required to know her staff's work schedule, and to approve all overtime hours.[43]   Plaintiff admits that she did not know when Ms. Nichols clocked in or out, because she did not know Nichols's work schedule.[44]   As a result,

---

[39] *See* Deposition of Sonja D. King, at 111-13.

[40] *See id.*

[41] Affidavit of Teresa Stephenson, ¶13.

[42] *See* doc. no. 42, Ex. B(2b) (Written Reprimand of Sonja King dated Nov. 13, 2006 Regarding E-Time).

[43] *See* doc. no. 42, Ex. A(15) (Volunteers of America, North Alabama Personnel Policies dated March 2006), at 14.

[44] *See* Deposition of Sonja D. King, at 13-16.

plaintiff relied on Ms. Nichols to correct her own time sheet.[45]   Discrepancies in Cassandra Nichols's time sheet entries resulted in a separate investigation of her conduct.[46]   In response to the reprimand issued to plaintiff for allowing Nichols to correct her own time sheet, plaintiff explains that, even though she was Ms. Nichols's immediate supervisor, Sarah Rickard and Amy Johnson — two other employees in VOANA's Florence, Alabama office — actually issued Ms. Nichols her assignments.[47]   She also claims that Teresa Stephenson never gave her a copy of Nichols's work schedule.[48]   Plaintiff argues that, under those circumstances, she was not required to know Cassandra Nichols's schedule.[49]

Plaintiff was also reprimanded for her failure to cooperate with the investigation into Nichols's time sheet entries.[50]   Ms. Bolden  testified that plaintiff "was uncooperative and defensive any time I asked her questions about Ms. Nichols or the hours she worked.  Ms. King's actions caused unneccessary delay in the investigation.  Ms. King's failure to cooperate contributed to that investigation being

---

[45] *See id.*

[46] *See* doc. no. 42, Ex. A(15) (Volunteers of America, North Alabama Personnel Policies dated March 2006), at 14.

[47] *See* Declaration of Sonja D. King, at 36.

[48] *See* Deposition of Sonja D. King, at 14-15.

[49] *See* Declaration of Sonja D. King, at 37.

[50] *See* doc. no. 42, Ex. B(2c) (Written Reprimand of Sonja King dated Nov. 13, 2006 Regarding King's Failure to Cooperate).

11

inconclusive."[51]  With regard to this reprimand, plaintiff claims that she cooperated

with the investigation, but simply refused to state that Nichols was "stealing time."[52]

Finally, plaintiff was given a written reprimand for frequent contact with

Cassandra Nichols during the time that Nichols was on administrative leave, in

violation of VOANA's personnel policies.[53]  Plaintiff admits that she spoke with

Nichols several times while Nichols was on administrative leave.[54]  Even so, plaintiff

claims that she was told to investigate the allegations against Nichols, and that she

had to call Nichols in order to complete her investigation.[55]

In response to Victor Tucker's letter and the reprimands referenced in it,

plaintiff submitted four letters to Human Resources and/or Tucker on November 15th

and 16th, 2006.[56]  Plaintiff did not mention any instance of racial harassment or

discrimination in any of those letters.  Instead, plaintiff stated: "I love working with

Volunteer's [*sic*] of America."[57]

---

[51] Affidavit of Cordia Bolden, ¶ 10.

[52] *See* doc. no. 43, at 16.

[53] *See* doc. no. 42, Ex. B(2d) (Written Reprimand of Sonja King dated Nov. 13, 2006 Regarding Contact with Employee on Administrative Leave); Deposition of Sonja D. King, at 144-48; doc. no. 42, Ex. A(15) (Volunteers of America, North Alabama Personnel Policies dated March 2006), at 29.

[54] *See* Deposition of Sonja D. King, at 144-45.

[55] *See* Declaration of Sonja D. King, at 37-38.

[56] *See* Deposition of Sonja D. King, at 224-33; doc. no. 42, Ex. A(12) (Letter dated Nov. 16, 2006); Ex. A(22) (Letter dated Nov. 15, 2006), Ex. A(24) (Letter dated Nov. 16, 2006); Ex. A(25) (Letter dated Nov. 15, 2006).

[57] Doc. no. 42, Ex. A(22) (Letter dated Nov. 15, 2006).

Victor Tucker directed a second letter to plaintiff on December 4, 2006, informing her that she was terminated.[58]  He allegedly made that decision for several reasons, including his conclusions that plaintiff:  (1) did not address the defective heating system in Group Home No. 26; (2) communicated with a VOANA employee on administrative leave, in violation of company policy; and (3) allowed Cassandra Nichols to edit her own time-sheets, and did not monitor Ms. Nichols's work time.[59]

## III.  DISCUSSION

### A.    Racial Discrimination

Plaintiff's race-discrimination claims are based upon Title VII of the Civil Rights Act of 1964 as amended, 42 U.S.C. § 2000e *et seq.*, and the Civil Rights Act of 1866 as amended by the Civil Rights Act of 1991, 42 U.S.C. § 1981.  Title VII makes it unlawful for a covered employer "to discriminate against any individual with respect to his [or her] compensation, terms, conditions, or privileges of employment, because of such individual's *race*, *color*, religion, sex, or national origin."  42 U.S.C. § 2000e-2(a)(1) (emphasis supplied).  Plaintiff alleges that defendant placed her on administrative leave and, ultimately, terminated her employment because of her race.  Plaintiff has the initial burden of making a *prima facie* showing of discrimination by

---

[58] *See* doc. no. 42, Ex. A(17) (Letter to Sonja King dated Dec. 4, 2006).

[59] *See id.*; Affidavit of Victor Tucker, ¶ 15.

13

defendant through either direct or circumstantial evidence. *See generally McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

### 1.   Direct Evidence

Plaintiff argues that "this is a direct evidence case" of discrimination, relying on statements regarding her race allegedly made by her direct supervisor, Teresa Stephenson, during the period that plaintiff worked as a service coordinator.[60]   To support her direct evidence argument, plaintiff offers only the following allegations, without a single citation to the evidentiary record:

> Stephenson told King to her face that she was not going to train her because she is black.  Stephenson put King on Administrative Leave because she would not falsify her investigative report to find that [Cassandra] Nichols was "stealing time" so Stephenson could fire or demote Nichols' "black ass" and replace her with a white employee, [Melissa] Castle. Stephenson told Nichols that she was going to fire King or have King fired because she is black.  Stephenson fired Tidwell-Slatton because she complained about Stephenson's racial epithets and calling black employees "niggers".  The working environment at VOANA was racially hostile.[61]

Curiously, plaintiff's own "direct evidence" argument suggests that plaintiff was placed on administrative leave for refusing to cooperate with the investigation of Cassandra Nichols, *not* because plaintiff is black.  In any event, the majority of plaintiff's argument consists of irrelevant, speculative, and conclusory statements

---

[60] Doc. no 43, at 24-26.

[61] *Id.* at 24-25.

about other VOANA employees.  Plaintiff references training, the decision to fire another employee, and the desire to fire or demote Cassandra Nichols.  None of those allegations are related to the act of placing plaintiff on administrative leave, or terminating plaintiff's employment and, therefore, cannot serve as direct evidence of discrimination.

Plaintiff also alleges, with no citation to any evidence of record, that Teresa Stephenson told Cassandra Nichols that she was going to fire plaintiff, or have her fired, because plaintiff is black.[62]  In her deposition, however, Ms. Nichols testified that she did not, in fact, know who decided to fire plaintiff, and that Teresa Stephenson never told her why plaintiff was terminated.[63]  Specifically, Nichols was asked:  "Did you overhear Ms. Stephenson ever say to anybody that Sonja [King, the plaintiff,] was not going to be coming back or was going to be fired because Sonja was black?"[64]  Her response was: "Not that I can recall at this time."[65]

Plaintiff's only relevant allegation is that Teresa Stephenson made statements about plaintiff's race in the following context:  "Teresa Stephenson, she didn't want to train me because I was a black individual, smart, educated, and she had told me in

---

[62] *See id.* at 22.

[63] *See* doc. no. 48, Ex. A (Deposition of Cassandra Renee Nichols), at 273-75.

[64] *Id. at 274.*

[65] *Id.* at 275.

15

my face."[66]  Although Teresa Stephenson was plaintiff's supervisor, she was not the

relevant decisionmaker for the company.[67]  Victor Tucker, VOANA's Chief Executive

Officer, made the decision to place plaintiff on administrative leave and later, after

conducting an investigation, to terminate her employment.[68]  Plaintiff does not allege

that Mr. Tucker made *any* remark regarding her race, or any discriminatory statement

related to his decisions to place her on administrative leave, or later, to terminate her

employment.  Plaintiff also does not offer any evidence or argument suggesting that

Mr. Tucker knew about any racially-discriminatory statements allegedly made by

others.  Instead, plaintiff suggests that Teresa Stephenson "actually determined who

worked and who did not work for VOANA in Florence, Alabama," and that Victor

Tucker then simply "rubber stamp[ed]" any decisions made by Stephenson.[69]

     Although plaintiff fails to address the issue or cite any legal authority to

support her position, plaintiff's exclusive reliance on statements allegedly made by

Ms. Stephenson hints at a "cat's paw" theory.  When a supervisor who manifested a

discriminatory animus toward the plaintiff, and the decisionmaker who ultimately

inflicted the adverse employment action complained of, are not one and the same,

---

[66] Deposition of Sonja D. King, at 135.

[67] *See* doc. no 43, at 21.

[68] *See* Affidavit of Victor Tucker, ¶ 13.

[69] *See* Declaration of Sonja D. King, at 7-8.

plaintiffs sometimes attempt to supply the missing link in the causal chain through use of a so-called "cat's paw" theory. *See*, *e.g.*, *Llampallas v. Mini-Circuits, Lab, Inc.*, 163 F.3d 1236, 1249 (11th Cir. 1998) ("In a cat's paw situation, the harasser clearly causes the tangible employment action, regardless of which individual actually signs the employee's walking papers."); *Bernstein v. Sephora*, 182 F. Supp. 2d 1214, 1218 (S.D. Fla. 2002) ("[W]here the titular decisionmaker is no more than a cat's paw, courts have looked beyond the formal structure of the decisionmaking process and held defendant companies liable for the invidious bias of the de facto decisionmaker.") (citing *Llampallas*, 163 F.3d at 1249; *Shager v. Upjohn Co*., 913 F.2d 398, 405 (7th Cir. 1990)).

> This theory provides that causation may be established if the plaintiff shows that the decisionmaker followed the biased recommendation without independently investigating the complaint against the employee. In such a case, the recommender is using the decisionmaker as a mere conduit, or "cat's paw" to give effect to the recommender's discriminatory animus.

*Stimpson v. City of Tuscaloosa*, 186 F.3d 1328, 1332 (11th Cir. 1999) (citing *Llampallas*, 163 F.3d at 1249). This theoretical construct is most easily grasped in the context of sexual harassment cases.

> Several courts have held that when the harasser in a Title VII case is not the decisionmaker, if the plaintiff shows that the harasser employed the decisionmaker as her "cat's paw" — *i.e.*, the decisionmaker acted in accordance with the harasser's decision without

> herself evaluating the employee's situation, *see Shager v. Upjohn Co.*, 913 F.2d 398, 405 (7th Cir. 1990) — causation is established. *See, e.g., Long v. Eastfield College*, 88 F.3d 300, 307 (5th Cir. 1996) ("If . . . [the decisionmaker] did not conduct his own independent investigation, and instead merely 'rubber stamped' the recommendations of [those who held a discriminatory animus], the causal link between [the plaintiffs'] protected activities and their subsequent termination, would remain intact."). In a cat's paw situation, the harasser clearly causes the tangible employment action, regardless of which individual actually signs the employee's walking papers. *See Shager*, 913 F.2d at 405 (stating that in such a situation "[t]he [decisionmaker] would no more be a nonconductor [for discriminatory animus] . . . than would be the secretary who typed [the plaintiff's] discharge papers knowing nothing of the [] discrimination that lay behind the discharge"); *Burlington Indus.*,[524] U.S. [742], 118 S. Ct. at 2269. In effect, the harasser *is* the decisionmaker, and the titular "decisionmaker" is a mere conduit for the harasser's discriminatory animus.

*Llampallas*, 163 F.3d at 1249 (emphasis in original) (holding that the defendant's ultimate decisionmaker did not act as the harasser's "cat's paw," because the ultimate decisionmaker met with the plaintiff to investigate the situation leading to harasser's complaints).

The "cat's paw" theory has been employed in contexts other than sexual harassment cases, however. For example, the plaintiff in *Stimpson v. City of Tuscaloosa* was a former city police officer who complained that she had been wrongfully terminated because of her sex. The Chief of Police recommended that the plaintiff be discharged and, following a hearing, the municipal Civil Service Board approved the recommendation. The Eleventh Circuit held on the basis of such facts

18

that the causal linkage between any gender-based animus motivating the Police Chief's recommendation and the plaintiff's subsequent termination was "broken by the Board's hearing and independent decision to actually terminate her." *Stimpson*, 186 F.3d at 1331.

In support of her "cat's paw" theory, plaintiff offers only statements allegedly made by Teresa Stephenson regarding her (Stephenson's) alleged status as the actual decisionmaker for hiring, disciplining, promoting, demoting, and terminating employees in the Florence, Alabama office. Plaintiff claims that Stephenson told her that Victor Tucker would "rubber stamp" whatever she told him to do regarding hiring and firing employees.[70] In her affidavit for this case, however, Teresa. Stephenson denied that she made the decision to terminate plaintiff, stating that "the decision was made solely by Mr. Tucker."[71] Similarly, Mr. Tucker explained that he alone made the decisions to place plaintiff on administrative leave and, later, following an investigation, to terminate plaintiff.[72] In his affidavit, Tucker explained: "As CEO, I alone exercise the authority to fire employees. I discussed the contents of each of Ms. King's letters with Cordia Bolden, and reviewed/evaluated additional information regarding assertions against Ms. King. After considering all this

---

[70] *Id.*

[71] Doc. no 42, Ex. E (Affidavit of Teresa Stephenson), ¶ 16.

[72] *See* Affidavit of Victor Tucker, ¶ 13.

information, I decided to terminate Ms. King's employment."[73]

Although plaintiff claims that Teresa Stephenson generally made decisions regarding VOANA employment, she offers no evidence, aside from her own speculative conclusions, that Stephenson made any decision regarding plaintiff's position. To the contrary, all of the evidence presented to this court suggests that Victor Tucker made an independent decision after personally evaluating plaintiff's performance. Mr. Tucker asked plaintiff to submit written statements addressing her alleged misconduct before he made his decision.[74] Mr. Tucker explained that he discussed the contents of these statements with Ms. Bolden, who worked in Human Resources, and reviewed additional information regarding the assertions against plaintiff.[75] After conducting his own review, Mr. Tucker made the decision to terminate plaintiff.[76] This evidence compels the conclusion that Mr. Tucker was not, as plaintiff implies, Ms. Stephenson's "cat's paw." *See Llampallas*, 163 F.3d at 1249 (no cat's paw when the employee is given the "opportunity to explain the situation" to the decisionmaker); *see also Hankins v. AirTran Airways, Inc.*, 237 Fed. Appx. 513, 521 n.5 (11th Cir. 2007) (no cat's paw when decisionmaker does an independent

---

[73] *Id.*

[74] *See id.* at ¶ 12.

[75] *See id.* at ¶ 13.

[76] *See id.*

investigation).  Because plaintiff has not proven that Teresa Stephenson was the relevant decisionmaker with regard to the decisions to place plaintiff on administrative leave, or to terminate her employment, any statements allegedly made by Ms. Stephenson referring to plaintiff's race cannot be considered direct evidence of discrimination by defendant.

### 2.    Circumstantial Evidence

Where there is no direct evidence of discrimination, the plaintiff bears the initial burden of establishing a *prima facie* case of an employer's intent to discriminate with circumstantial evidence.. *E.g.*, *Vessels v. Atlanta Independent School System*, 408 F.3d 763, 767 (11th Cir. 2005) (citing *McDonnell Douglas*, 411 U.S. at 802).  "[A] plaintiff discharged for misconduct makes out a *prima facie* case of discriminatory discharge if she shows that she is a member of a protected class, that she was qualified for the job from which she was fired, and 'that the misconduct for which she was discharged was nearly identical to that engaged in by [an employee outside the protected class] whom [the employer] retained.'" *Williams v. Motorola, Inc.*, 303 F.3d 1284, 1293 (11th Cir. 2002) (bracketed alterations in original) (quoting *Nix v. WLCY Radio / Rahall Communications*, 738 F.2d 1181, 1184 (11th Cir. 1984)). *See also*, *e.g.*, *Cuddeback v. Florida Board of Education*, 381 F.3d 1230, 1235 (11th Cir. 2004).

"Establishment of the *prima facie* case in effect creates a *presumption* that the employer unlawfully discriminated against the employee."  *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 254 (1973) (emphasis supplied).  "The effect of the presumption of discrimination created by establishment of the *prima facie* case is to shift to the employer the burden of producing legitimate, non-discriminatory reasons for the challenged employment action."  *Combs v. Plantation Patterns*, 106 F.3d 1519, 1528 (11th Cir. 1997) (citing *McDonnell Douglas*, 411 U.S. at 802; *Burdine*, 450 U.S. at 254).  The employer's burden at the second stage of analysis "is one of production, not persuasion; it 'can involve no credibility assessment.'"  *Reeves v. Sanderson Plumbing Products*, *Inc.*, 530 U.S. 133, 142 (2000) (quoting *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 509 (1993)).  "To satisfy that burden of production, '[t]he defendant need not persuade the court that it was actually motivated by the proffered reasons.  It is sufficient if the defendant's evidence raises a genuine issue of fact as to whether it discriminated against the plaintiff.'"  *Combs*, 106 F.3d at 1528 (quoting *Burdine*, 450 U.S. at 254-55 (citation and footnote omitted)).  Indeed, "the employer need only produce admissible evidence which would allow the trier of fact rationally to conclude that the employment decision had not been motivated by discriminatory animus."  *Burdine*, 450 U.S. at 257.

If a defendant carries its burden of producing "admissible evidence which would allow the trier of fact rationally to conclude that the employment decision had not been motivated by discriminatory animus," *id.*, then the "rebuttable presumption" of discrimination created by the demonstration of a *prima facie* case[77] is refuted, "drops from the case," and "the factual inquiry proceeds to a new level of specificity." *Id.* at 255 & n.10.

In this final step of the analytical process, the burden shifts back to the plaintiff to "come forward with evidence, including the previously produced evidence establishing the *prima facie* case, sufficient to permit a reasonable factfinder to conclude that the reasons given by the employer were not the real reasons for the adverse employment decision," but merely a pretext for intentional discrimination. *Combs*, 106 F.3d at 1528 (citing *Burdine*, 450 U.S. at 256; *McDonnell Douglas*, 411 U.S. at 804). *See also Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1088 (11th Cir. 2004) ("If the proffered reason is one that might motivate a reasonable employer, a plaintiff cannot recast the reason but must meet it head on and rebut it. Quarreling with that reason is not sufficient.") (internal citation omitted). The plaintiff shoulders that burden by demonstrating "such weaknesses, implausibilities, inconsistencies,

---

[77] *See Burdine*, 450 U.S. at 254 n.7 (explaining that, in the *McDonnell Douglas* context, the phrase "*prima facie* case" is used to "denote the establishment of a legally mandatory, rebuttable presumption [of discrimination]").

23

incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could find them unworthy of credence." *Combs*, 106 F.3d at 1538 (internal quotations and citation omitted).

In this case, plaintiff entirely ignores the *McDonnell Douglas* framework outlined above, instead choosing to rely exclusively on her underdeveloped and ultimately meritless argument that this is a direct evidence case.  Plaintiff provides no evidence or argument whatsoever to establish the elements necessary to make out a *prima facie* case with circumstantial evidence.  Consequently, any contentions not addressed in plaintiff's brief are deemed abandoned.  *See*, *e.g.*, *Chapman v. AI Transport* 229 F.3d 1012, 1027 (11th Cir. 2000) (*en banc*) ("Parties opposing summary judgment are appropriately charged with the responsibility of marshaling and presenting their evidence before summary judgment is granted, not afterwards.").

By sifting through plaintiff's purported facts, the court could conclude that plaintiff was a member of a protected class and generally was qualified for her job, but plaintiff provides no evidence that the misconduct for which she was placed on administrative leave and ultimately discharged was nearly identical to that engaged in by an employee outside of her protected class whom the employer retained. Without evidence of such a comparator, plaintiff cannot establish a *prima facie* case.

Even if plaintiff had been able to establish a *prima facie* case, defendant has

proffered legitimate, non-discriminatory reasons for having taken the relevant employment actions.  Mr. Tucker alleged that he made the decision to place plaintiff on administrative leave and, ultimately, to terminate her employment, for several reasons, including his conclusions that:  (1) plaintiff did not address the defective heating system at one of the group homes she managed; (2) she communicated with a VOANA employee on administrative leave, Cassandra Nichols, in violation of company policy; and (3) plaintiff allowed Nichols to edit her own time-sheets, and did not monitor Nichols's work time.[78]

In response to defendant's proffered legitimate non-discriminatory reasons for having taken the relevant employment actions, plaintiff admits that she engaged in conduct prohibited by VOANA's policies.  Plaintiff claims, nevertheless, that each of her violations of Company policies was justified because she acted under the direction of other VOANA employees.  Although plaintiff vehemently claims that defendant's reasons for Victor Tucker's decisions are pretextual, she offers no evidence or argument to support that assertion.  Plaintiff's naked allegations are insufficient to defeat a motion for summary judgement.  *See Young v. General Foods Corp.*, 840 F.2d 825, 830 (11th Cir. 1988) ("Conclusory allegations of discrimination, without more, are not sufficient to raise an inference of pretext or intentional

---

[78] *See id.*; Affidavit of Victor Tucker, ¶ 15.

discrimination.")  The court will not speculate on what arguments might be made, especially when they are not fully developed or bolstered with legal authority.  *See*, *e.g.*, *United States Steel Corp. v. Astrue*, 495 F.3d 1272, 1287 n.13 (11th Cir. 2007) (refusing to address a party's "perfunctory and underdeveloped argument") (citing *Flanigan's Enterprises, Inc. v. Fulton County*, 242 F.3d 976, 987 n.16 (11th Cir. 2001) (holding that "fail[ure] to elaborate or provide any citation of authority in support [of an argument]" results in waiver)).  Therefore, defendant is entitled to summary judgment on plaintiff's discrimination claim.

## B.    Retaliation

Plaintiff also claims that she was retaliated against for reporting the alleged racial harassment to Cordia Bolden. Title VII prohibits retaliation against an employee "because [s]he has opposed any practice made an unlawful employment practice by [Title VII], or because she has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing [thereunder]." 42 U.S.C. § 2000e-3(a).  A *prima facie* case of retaliation under Title VII requires the plaintiff to show that: (1) she engaged in an activity protected under Title VII; (2) she suffered an adverse employment action; and (3) there was a causal connection between the protected activity and the adverse employment action.  *See Crawford v. Carroll*, 529 F.3d 961, 970 (11th Cir. 2008);  *Pennington v. City of Huntsville*, 261

F.3d 1262, 1266 (11th Cir. 2001).

In the absence of direct evidence of retaliatory motive, the *McDonnell Douglas* burden shifting analysis applies to retaliation claims under Title VII.  *See Hurlbert v. St. Mary's Health Care System, Inc.*, 439 F.3d 1286, 1297 (11th Cir. 2006).  Under that formulation, "[i]f the plaintiff makes out a *prima facie* case, the burden then shifts to the defendant to articulate a legitimate reason for the adverse action."  *Id.* "If the defendant does so, the plaintiff must then show that the defendant's proffered reason for the adverse action is pretextual."  *Id.*

Plaintiff's argument on the issue of retaliation is not entirely clear because she offers various conclusions as to which actions she believes led to the relevant employment decisions.  For example, plaintiff argues that "[t]he November 13, 2006 letter was sent to King in retaliation for King's refusing to do what [Teresa] Stephenson told King to do and that was to falsely state that [Cassandra] Nichols was stealing time."[79]  Put simply, plaintiff implies that she was placed on administrative leave because she refused to aid in the investigation of Ms. Nichol's time sheet entries.  Of course, plaintiff's refusal to aid in the investigation does not constitute a protected activity for the purpose of proving a claim of retaliation.

Plaintiff also claims that, in September of 2006, she and Cassandra Nichols

---

[79] *See* doc. no. 43, at 11.

complained of discriminatory treatment to Cordia Bolden.  Specifically, plaintiff

offers the following argument in support of her retaliation claim:

> King was severely retaliated against immediately after reporting to
> Bolden in September 2006 that Stephenson was going to fire and/or
> demote Nichols because she is black and Stephenson wanted Nichol's
> "black ass" out of that job so [Melissa] Castle who is white could
> replace Nichols and after King would not falsely find that Nichols'
> "black ass" was not guilty of "stealing time."[80]

Although Ms. Bolden, *herself an African-American female*, categorically denies

having ever received any such complaints, the court must consider as true plaintiff's

claim that she made the complaints of discrimination to Ms. Bolden.  Even so,

plaintiff has not shown that Victor Tucker, who made the decision to place King on

administrative leave and, ultimately, to terminate her employment, was aware of these

complaints of discrimination prior to making the relevant decisions.   In her

declaration, plaintiff explains that she attempted to meet with Mr. Tucker to discuss

her concerns, and that Mr. Tucker offered to set up such a meeting.[81]  Plaintiff admits,

however, that she never actually met with him.[82]  Mr. Tucker denies ever having

heard any complaint of discrimination made by plaintiff.[83]  Having failed to show that

the actual decisionmaker was even aware of complaints of discriminatory treatment,

---

[80] *Id*. at 25-26.

[81] *See* Declaration of Sonja D. King, at 25-26.

[82] *See id.*

[83] *See* Affidavit of Victor Tucker, ¶ 21.

plaintiff cannot make out a case of retaliation. *See*, *e.g.*, *Raney v. Vinson Guard Service*, *Inc.*, 120 F.3d 1192, 1197 (11th Cir. 1997) ("[A] plaintiff must, at a minimum, generally establish that the defendant was actually aware of the protected expression at the time the defendant took the adverse employment action.").

Even if plaintiff could establish of a *prima facie* case of retaliation, she has offered no evidence that defendant's proffered legitimate reasons for placing her on leave or terminating her employment were mere pretext. Accordingly, defendant is entitled to summary judgment on plaintiff's retaliation claim.

## C.    Slander

In her complaint, plaintiff alleges that VOANA slandered her when its supervisors "talked to, made derogatory statements [about plaintiff] to, and made false defamatory statements to people not employed by VOANA."[84]  The complaint alleges that,

> in November and December of 2006, [VOANA's] supervisors wrongfully and falsely told people not employed by [VOANA] that King was being put on administrative leave for allowing another employee to falsify records and for interfering with an investigation; that King could not be trusted; and, that King was not pulling her weight on the job and could not do the job that King was employed to do.[85]

Plaintiff's response to defendant's motion for summary judgment completely

---

[84] Doc. no. 1, at 7.

[85] *Id.*

fails to address her slander claim.  Therefore, the court assumes that plaintiff has abandoned the claim.  *C.f. Road Sprinkler Fitters Local Union No. 669 v. Independent Sprinkler Corp.*, 10 F.3d 1563, 1568 (11th Cir. 1994) (holding that a district court can "properly treat as abandoned a claim alleged in the complaint but not even raised as a ground for summary judgment") (citing *Lazzara v. Howard A. Esser*, *Inc.*, 802 F.2d 260, 269 (7th Cir. 1986) (holding that a ground not pressed in opposition to a motion for summary judgment is to be treated by the district court as abandoned)).

Even if plaintiff had addressed defendant's argument regarding her slander claim, defendant still would be entitled to summary judgment.  In plaintiff's deposition, she explained that she was not present when the alleged statements were purportedly made.[86]  Nor has she provided evidence from any person who actually heard a VOANA employee make any of the alleged statements.  Rather, plaintiff relies solely on her own testimony about what other people allegedly told her regarding statements allegedly made by Teresa Stephenson, Sarah Rickard, and Debra Williamson.  Put simply, plaintiff relies on hearsay within hearsay, which cannot be considered on a motion for summary judgment.  *See Brassfield v. Jack McLendon Furniture, Inc.*, 953 F. Supp. 1438, 1459 n.8 (M.D. Ala. 1996) (noting that the

---

[86] *See* Deposition of Sonja D. King, at 261-70.

plaintiff's defamation claim against a former co-worker was not viable where the only evidence that the co-worker made any derogatory comments concerning the plaintiff was the plaintiff's testimony that a customer told the plaintiff of the co-worker's comment, which constituted inadmissible hearsay) (citing *Van T. Junkins and Associates v. U.S. Industries*, 736 F.2d 656 (11th Cir. 1984)).  Because the only evidence available to support the slander claim is inadmissible, plaintiff cannot defeat a motion for summary judgment.

**D.     Invasion of Privacy**

In Alabama, the tort of invasion of privacy consists of four distinct theories: (1) the intrusion upon the plaintiff's physical solitude or seclusion; (2) publicity which violates the ordinary decencies; (3) putting the plaintiff in a false, but not necessarily defamatory position in the public eye; and (4) the appropriation of some element of plaintiff's personality for a commercial use.  *See Pouncy v. Vulcan Materials Co.*, 920 F. Supp. 1566, 1583 (N.D. Ala. 1996).  In her complaint, plaintiff claims that defendant exposed her "to unwarranted publicity in that [defendant] slandered King by publishing false and defamatory statements of and concerning King."[87]  Plaintiff's claim thus raises issues under both the second and third theories.

**1.     Publicity which violates the ordinary decencies**

---

[87] Doc. no. 1, at 8.

31

Under Alabama law, "one who gives *publicity* to a matter concerning the private life of another is subject to liability to the other for invasion of privacy, if the matter publicized is of a kind that '(a) would be highly offensive to a reasonable person, and (b) is not of legitimate concern to the public.'" *Johnston v. Fuller*, 706 So. 2d 700, 703 (Ala. 1997) (quoting *Restatement (Second) of Torts* § 652D (1997) (emphasis in original)).  In order to satisfy the publicity element of her claim, plaintiff must prove that defendant made a "matter . . . public, by communicating it to the public at large, or to so many persons that the matter must be regarded as substantially certain to become one of public knowledge." *Johnston*, 706 So. 2d at 703.  The communication must "reach the public." *Id.*  "It is not an invasion of the right of privacy . . . to communicate a fact concerning the plaintiff's private life to a single person or even to a small group of persons." *Id.*

With regard to her invasion of privacy claim, plaintiff's only contention is that she "has proven that Stephenson put her in a false light in the public eye of many people, including people like Hardy about whom Stephenson insisted King make unfavorable comments and then made it appear as if those comments were King's very own opinions and beliefs about Hardy."[88]  Consistent with the rest of plaintiff's response, her invasion of privacy argument contains absolutely no citations to the

---

[88] Doc. no. 43, at 26.

record. Plaintiff's allegation is insufficient to prove the publicity element necessary to make out an invasion of privacy claim.

### 2.    Putting the plaintiff in a false position in the public eye

Alabama law defines the "false position" type of invasion of privacy claim as follows:

> One who gives publicity to a matter concerning another that places the other before the public in a false light is subject to liability for invasion of privacy, if (a) the false light in which the other was placed would be *highly offensive* to a reasonable person, and (b) the actor had knowledge or acted in reckless disregard as to the *falsity of the publicized matter* and the *false light* in which the other would be placed.

*Schifano v. Greene County Greyhound Park, Inc.*, 624 So. 2d 178, 180 (Ala. 1993) (quoting Restatement (Second) of Torts § 652E (1997)) (emphasis in original).

As with an "ordinary decencies" invasion of privacy claim, in order to prove her "false position" invasion of privacy claim, plaintiff must show that VOANA gave "publicity" to a matter concerning her in a false light.  As noted above, plaintiff has not established the publicity element and, therefore, her claim must fail**.**

### E.    Negligent and/or Wanton Hiring, Training, Supervision, and/or Retention

According to plaintiff's complaint, her negligent and/or wanton hiring, training, supervision, and retention claim is based on her allegations of racial

discrimination and harassment against Ms. Stephenson.[89]  "In order to establish a claim against an employer for negligent supervision, training, and/or retention, the plaintiff must establish that the allegedly incompetent employee committed a common law Alabama tort."  *Thrasher v. Ivan Leonard Chevrolet, Inc.*, 195 F. Supp. 2d 1314, 1320 (N.D. Ala. 2002).  In *Thrasher*, the court explained that a plaintiff "cannot maintain an action for negligent supervision, training, and/or retention based upon conduct that is employment discrimination, but does not support a common law tort."  *See id.*

Plaintiff presents no evidence that Stephenson committed a common-law tort.  Although she asserts claims for slander and invasion of privacy, those claims fail for the reasons discussed above.  King's failure to establish that Ms. Stephenson committed a common-law, Alabama tort is fatal to her negligence claim.

Furthermore, another critical element of a negligent hiring and supervision claim is "proof that the defendants actually knew, or should have discovered in the exercise of due diligence," that the employee was "likely" to commit the wrong complained of by the plaintiff.  *Sanders v. Shoe Show, Inc.*, 778 So. 2d 820, 824 (Ala. Civ. App. 2000).  Here, plaintiff cannot prove that VOANA actually knew or should have discovered in the exercise of due diligence that Stephenson was likely to commit

---

[89] *See* doc. no. 1, at 9-11.

a common law tort.  Thus, plaintiff's negligent hiring, supervision, or retention claim fails.

In order to establish a wantonness claim, plaintiff must meet an even more rigorous standard.  "In addition to requiring proof that an employer knows or should know that an employee is incompetent, a claim of wanton supervision carries the additional requirement that the plaintiff demonstrate that the employer has 'wantonly disregard[ed] its agent's incompetence."  *Gardener v. State Farm Mutual Auto Insurance Co.*, 842 So. 2d 1, 10-11 (Ala. Civ. App. 2002) (quoting *Armstrong Business Services v. AmSouth Bank*, 817 So.2d 665 (Ala. 2001).  Plaintiff has not made such showing, and therefore, her wantonness claim also fails.

## IV.  CONCLUSIONS

For all of the foregoing reasons, defendant's motion for summary judgment will be granted on the five claims to which it is directed:  *i.e.*, all claims, except for plaintiff's racial harassment contentions, which remain pending.  An appropriate order consistent with this memorandum opinion will be entered contemporaneously herewith.

DONE this 19th day of February, 2010.

_____
United States District Judge